JESSICA McHARRIE (SBN 280049)
McHARRIE LAW
424 F Street, Suite A
San Diego, California 92101
Tel:   (619) 702-2013
Fax:   (619) 702-5415
Email:  jessmcharrie@gmail.com

GERALD SINGLETON (SBN 208783)
BRODY A. McBRIDE  (SBN 270852)
SINGLETON LAW FIRM, APC
115 West Plaza Street
Solana Beach, CA  92075
Tel:   (760) 697-1330
Fax:   (760) 697-1329
Email:   gerald@geraldsingleton.com
              brody@geraldsingleton.com

Attorneys for Plaintiff LEO TOWNSEND

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO TOWNSEND,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, San Diego Sheriff WILLIAM D. GORE, Sheriff's Deputy WILCOX, and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  **'14 CV 2073 MMA WVG**<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF HIS CIVIL RIGHTS**<br><br>**(42 U.S.C. § 1983)**<br><br>**JURY TRIAL DEMAND** |

1

Plaintiff LEO TOWNSEND (hereinafter "Plaintiff TOWNSEND"), by and through his attorneys, does hereby file the following Complaint for damages against Defendants, COUNTY OF SAN DIEGO, San Diego County Sheriff WILLIAM D. GORE, San Diego County Sheriff's Deputy WILCOX, DOE Deputies 1-25, and DOES 26-50, for personal injuries and violations of his constitutional rights while being detained, pre-trial, at the San Diego County Central Jail.

## INTRODUCTION

1.      Plaintiff TOWNSEND brings this civil rights action, under Title 42 United States Code ("U.S.C.") §§ 1983 and 1988, seeking compensatory damages, punitive damages, and attorneys fees and costs of suit from Defendants, for being subjected to excessive force and then being denied medical attention that caused severe and permanent injuries in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.   Plaintiff further seeks declaratory and injunctive relief, under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, directing the San Diego Sheriff's Department to conduct training in the use of appropriate force and discipline with pretrial detainees, to ensure that adequate medical care is provided, and to maintain oversight to prevent further constitutional violations.

2.      Additionally, Plaintiff TOWNSEND includes supplemental claims under California state law against Defendants for:  (1) Failure to Summon Medical Care (California Government Code §845.6); (2) Failure to Discharge a Mandatory Duty (California Government Code §815.6); (3) Medical Malpractice; (4) Battery; (5) Negligence; and (6) Violations of the Bane Civil Rights Act (California Civil Code §52.1, et seq.).

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction to grant the relief requested herein pursuant to the Civil Rights Acts, 42 U.S.C. §1983, et seq., the Judicial Code, 28 U.S.C. §§1331 and 1343(3) and (4), and the Constitutions of the United States and the State of California. Furthermore, 42 U.S.C. §1997e(e) authorizes Plaintiff's claim for the award of damages for mental and emotional injuries as a result of having sustained significant physical injury.

4.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred at San Diego Central Jail, detention facility owned and operated by Defendant COUNTY OF SAN DIEGO, which is located within the Southern District of California.

**PARTIES**

5.      Plaintiff TOWNSEND is a United States Citizen of African-American decent.  At the time the initial incident giving rise to this Complaint occurred, Plaintiff was awaiting trial and being detained in Housing Unit 8C of the San Diego Central Jail, in the County of San Diego, State of California.  Plaintiff's Inmate Booking number was 14749170.

6.      Defendant COUNTY OF SAN DIEGO ("COUNTY") is a municipal entity duly organized under the laws of the state of California. The San Diego Sheriff's Department ("Sheriff's Department") is the chief law enforcement entity for the COUNTY.  Defendant COUNTY is responsible for Plaintiff TOWNSEND's injuries under 42 U.S.C. § 1983 because its official policies, practices, and/or customs caused his injuries.  Defendant COUNTY is vicariously liable for the acts and omissions of its employees committed during the course and scope of their employment, including employees of the Sheriff's Department, under California Government Code §§815.2 and 820(a).

7.     At all times relevant to this Complaint, Defendant WILLIAM GORE was the Sheriff of San Diego County and a policymaker for the Sheriff's Department.  In that capacity, he is the official responsible for setting and enforcing the policies, customs, and practices of the Sheriff's Department.  He is sued in his official capacity.

8.     As the Sheriff of San Diego County, Defendant GORE is responsible for carrying out the policies of the San Diego County Sheriff's Department, as well as the supervision and control of deputies who are or were employed by the Sheriff's Department, who are under his command, and/or who report to him, including Defendants WILCOX and/or DOE Deputies 1-25.

9.     At all times relevant to this Complaint, Defendant Deputy WILCOX was a San Diego Sheriff's Deputy working at San Diego Central Jail ("Central Jail").

10.     At all times relevant to this Complaint, Defendant DOES 1-25 were San Diego Sheriff's Deputies, Corporals, Sergeants, and agents and/or employees of Defendant COUNTY and of the Sheriff's Department.

11.     At all times relevant to this Complaint, Defendant DOES 26-50 were either nurses, doctors, or other individuals or organizations employed, hired, engaged, or retained by Defendant COUNTY to provide medical care and services to inmates at Central Jail.   At all times relevant hereto, these Defendants were acting as employees and/or agents for the COUNTY, in their professional capacities.

12.     Plaintiff TOWNSEND does not know the true names or capacities of the Defendants sued herein as DOES 1-50, inclusive, and, therefore, sue them by such fictitious names.  Plaintiff is informed and believes and upon such information and belief alleges that each of the fictitiously named defendants are responsible in some manner for the occurrences alleged in this Complaint, and that Plaintiff's damages alleged herein were legally caused by such conduct.  Plaintiff is informed and believes that at all times relevant, said Defendants, and each of them, were the agents and/or employees of their

co-defendants, and in doing the things alleged, were acting within the scope of their agency and/or employment and with the permission of their co-defendants. Plaintiff is informed and believes that each of the individual Defendants was in some way responsible for the constitutional violations and torts alleged in this complaint.

13.     Plaintiff is informed and believes, and thereon alleges, that Defendant COUNTY employed Defendants WILCOX and DOES 1-50.

14.     At all material times mentioned herein, Defendants were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the state of California, San Diego County, and/or the San Diego County Sheriff's Department. All Defendants employed by the COUNTY, and/or who were agents of the COUNTY, were acting pursuant to their employment and/or agency at all times alleged herein.

### *MONELL* **ALLEGATIONS**

15.     Based upon the principles set forth in *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), Defendant COUNTY is liable for all of the injuries and damages sustained by Plaintiff TOWNSEND set forth herein. Defendant COUNTY bears liability because its policies, practices and/or customs caused Plaintiff's injuries.

16.     In particular, Defendant Sheriff GORE, and other individuals with supervisory and policy-making authority, has/have condoned an ongoing pattern and practice of calculated brutality and harassment, committed by Sheriff's deputies assigned to the jails, which are unrelated to any legal, legitimate penal interest. Defendant COUNTY and its officials, including Defendant Sheriff GORE, maintained and/or permitted one or more of the following official policies, customs, or practices:

a)   Failure to provide adequate training and supervision to Sheriff's deputies with respect to the constitutional limits on the use of force;

b) Failure to adequately discipline or retrain Sheriff's deputies involved in blatant misconduct;

c) The selection, retention, and assignation of Sheriff's deputies with demonstrable propensities for excessive force, violence, dishonesty, and other misconduct;

d) Condoning and/or encouraging Sheriff's deputies' belief that they can violate the rights of persons, such as Plaintiff TOWNSEND, with impunity, and that such conduct will <u>not</u> adversely affect their job status, opportunities for promotion, and other employment benefits;

e) Failure to provide proper and adequate medical care to inmates and detainees, such as Plaintiff TOWNSEND;

f) Failure to practice and enforce proper reporting and investigation of use of force by Sheriff's deputies working within detention facilities;

g) Dissuading and/or discouraging Sheriff's deputies who witnessed misconduct, including the use of excessive and unconstitutional force, by other deputies from stopping and/or reporting such unconstitutional acts;

h) Tolerating and/or promoting a culture in which deputies discouraged and/or dissuaded other deputies who witnessed incidents of excessive force from reporting these incidents; and

i) Ratification by the highest levels of authority of the specific types of unconstitutional acts alleged in this complaint.

17.    The policies, practices, and customs of Defendant COUNTY caused and resulted in Defendants violating Plaintiff TOWNSEND's right to be free from cruel and unusual punishment and his right to substantive due process, Defendants' denial of necessary medical care to Plaintiff, and Defendants treating Plaintiff in a demeaning,

abusive, hostile, and discriminatory manner in violation of the U.S. and California Constitutions, and the case and/or statutory law interpreting them.

## GOVERNMENTAL LIABILITY

18.     Plaintiff TOWNSEND alleges that all Defendants carried out the acts and omissions set forth herein in the course and scope of their employment and/or agency with the COUNTY and under color of law.

19.     Regarding all actions and causes of action herein alleged and stated, all governmental Defendants (including all DOE Defendants) violated rights held by Plaintiff TOWNSEND which were clearly established and which Defendants had a mandatory duty to uphold.  No reasonable official similarly situated to any of the Defendants could have believed that his conduct was lawful or within the bounds of reasonable discretion.   All individual Defendants, including all individual DOE Defendants, thus lack immunity from suit or liability.  This extends both to statutorily created immunity and to the judicially created doctrine of "qualified immunity."

20.     The United States Supreme Court has long held that the Eighth Amendment's prohibition of cruel and unusual punishment required that prison officials take reasonable measures to guarantee and protect the health safety of inmates.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson* v. *Palmer*, 468 U.S. 517, 526-527, (1984).

21.     The high court has also long held that jail and prison officials are obligated under the Eighth Amendment to provide prisoners with adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  This principle applies regardless of whether the medical care is provided by governmental employees or by private medical staff under contract with the government.  *West v. Atkins*, 487 U.S. 42, 57-58 (1988); *Richardson v. McKnight*, 521 U.S. 399 (1997).

22.     In order to prevail on a constitutional claim of inadequate medical care, inmates must show that jail/prison officials treated them with "deliberate indifference" to serious medical needs.  *Estelle*, 429 U.S. 104.  A jail/prison official demonstrates "deliberate indifference" if he or she recklessly disregards a substantial risk of harm to the inmate.  *Farmer*, 511 U.S. at 836.  This is a higher standard than negligence, and requires that the official knows of and disregards an excessive risk of harm to the inmate.  *Id* at 837.  The jail/prison official does not, however, need to know of a specific risk from a specific source.  *Id* at 843.

23.     Proof of a jail/prison official's knowledge of a substantial risk to a prisoner's health can be proven by circumstantial evidence.  For example, it may be inferred from "the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842.  This circumstantial proof may be shown by deterioration in prisoners' health, such as obvious conditions like sharp weight loss. A jail/prison official cannot "escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist."  *Farmer*, 511 U.S. at 843, n.8.

24.     A jail official violates the Eighth Amendment, and thereby commits a constitutional tort against an inmate, when two requirements are met:  (1) the violation complained of is sufficiently serious, and (2) the official is deliberately indifferent to the inmate's safety.  *Farmer*, 511 U.S. at 834.

25.     Pre-trial detainees have a constitutional right <u>not</u> to be subjected to unconstitutional conditions of confinement.  While there is not a specific agreement among the federal courts as to whether this right sounds in the Fifth, Eighth, or Fourteenth Amendments to the United States Constitution, the Ninth Circuit and the Supreme Court clearly state that the constitutional protections that must be afforded to

pre-trial detainees are, at minimum, coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment for convicted offenders:

> We do not find it inappropriate that the same standard may be used under the fourteenth and eighth amendments. It would indeed be surprising if ... "conduct that shocks the conscience" or "affords brutality the cloak of law," and so violates the Fourteenth Amendment were not also punishment "inconsistent with contemporary standards of decency" and "repugnant to the conscience of mankind" in violation of the Eighth [Amendment]. *Whitley v. Albers*, 475 U.S. at 327 (citations omitted).  Moreover, we see no reason why a maturing society should employ any less a standard of tolerance toward [violence done to] a convicted prisoner as opposed to [violence done to] a pretrial detainee.

*Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991).

26.    In *Redman*, the Ninth Circuit reversed a trial court's ruling that another inmate could not hold the San Diego County Sheriff liable for a constitutional tort as a result of the rape of a pre-trial detainee.  Instead, the Court explained that if the "deliberate indifference" of a jail official(s) resulted in a pre-trial detainee being raped by another detainee and/or inmate, then the official who demonstrated the "deliberate indifference" has committed a constitutional tort against the rape victim.

27.    Here, Defendants, and each of them, had a duty to take all reasonably necessary steps to ensure Plaintiff received adequate medical care.  As set forth in detail below, Defendants' deliberate indifference to Plaintiff's suffering (as evidenced by their failure to give Plaintiff an x-ray for two (2) weeks following his injury and their failure to provide the required surgery to repair Plaintiff's wrist despite the fact that Plaintiff was going to be incarcerated for ten (10) weeks following the x-ray which diagnosed the break) subjects Defendants to liability.

28.    The individual COUNTY employee Defendants (both named and DOE) are liable for their conduct to the same extent as a private person under California

Government Code §820(a).  This includes, but is not limited to, acts and omissions that constitute negligence under California Civil Code §1714, and/or common law tort liability.[1]

29.   Defendant COUNTY is liable in *respondeat superior* for the torts of its employees committed during the course and scope of their employees' employment under California Government Code §815.2(a).  This includes, but is not limited to, liability for negligent acts and omissions committed by employees of Defendant COUNTY while said employees were acting within the course and scope of their employment.[2]

30.   All Defendants are joint and severally liable for any damages awarded.  Under California Government Code §825(a), Defendant COUNTY is obligated to pay any compensatory damages and costs awarded against their employees.

31.   Plaintiff has substantially complied with the claims presentation requirement set forth in California Government Code §900 et seq.; therefore, Plaintiff is entitled to bring state law tort claims against both the COUNTY and the individual COUNTY employee Defendants (both named and DOE) listed herein.  To the extent that any of the DOES are private individuals or legal entities, the claims filing requirement does not apply to them.

---

[1]   California Civil Code §1714 reads, in pertinent part, "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person."

[2]   *Respondeat superior* liability applies only to statutory and common-law torts under California law and does <u>not</u> attach to federal constitutional torts brought under 42 U.S.C. § 1983.  However, *respondeat superior* liability under section 815.2 does apply to civil rights claims brought under the Bane Act (California Civil Code §52.1, et seq.)

## FACTUAL ALLEGATIONS

32.    The Sheriff's Department operates the COUNTY's jail system and has the legal obligation to provide constitutionally sufficient medical care for persons held in COUNTY custody.

33.    The Central Jail is one of seven (7) detention facilities owned, operated, and staffed by Defendant COUNTY through the Sheriff's Department.

34.    The official policy of the Sheriff's Department in running all seven detention facilities is the protection of inmates' constitutional rights and that "the basic physical … needs of persons incarcerated within the Sheriff's Detention Facilities … be maintained."   (*See* San Diego Sheriff's Department Detention Services Bureau, MANUAL OF POLICIES & PROCEDURES, §A.1: *Philosophy, Goals, Policies,* Exhibit 1, at 1, (hereinafter "MANUAL"), excerpts attached, and hereby incorporated by reference, as Exhibit 1: Manual)

35.    In September 2012, Plaintiff TOWNSEND was being detained in the Central Jail and assigned to Housing Unit 8C.

### Excessive Force

36.    Inmates located at detention facilities run by the Sheriff's Department, Including the Central Jail, are subject to "counts", which is "a uniform procedure for physically counting all inmates within the facility." (MANUAL, Inmate Count Procedure, § I.43: *Purpose*; Exhibit 1, at 2.)

37.    On or about September 29, 2012, during count in Housing Unit 8C, three San Diego Sheriff's Correctional Deputies, Deputy WILCOX, DOE Deputy, and DOE Corporal, entered Plaintiff's cell.  Plaintiff said or did something which offended and/or angered Deputy WILCOX.  In response, without legal justification, Defendant Deputy WILCOX violently grabbed Plaintiff TOWNSEND from his bunk, pushed his face

against the wall, grabbed his arms and pulled them behind his back, and tightly cinched a pair of handcuffs around his wrists.

38.   Plaintiff TOWNSEND immediately felt pain and discomfort in his wrist and informed the Deputies that the handcuffs were too tight.  However, Defendants' ignored Plaintiff's requests to loosen the handcuffs.

39.   Defendant WILCOX then escorted Plaintiff out of the cell downstairs to a multipurpose room and exerted unnecessary downward pressure on the handcuffs to promote unnecessary pain and discomfort.  At no point did Plaintiff TOWNSEND resist or physically threaten any of the Defendants.

40.   Once in the multipurpose room, Defendant WILCOX shoved and kicked Plaintiff to the floor and verbally threatened to shoot and kill Plaintiff should he ever see him on the streets of San Diego.  At no point did Plaintiff physically resist in any way, disobey any lawful directives, or pose any threat to any of the Deputies present (or to anyone else).   Moreover, no reasonably Deputy in WILCOX's position could have believed that the use of force he applied to Plaintiff was lawful or necessary under the totality of the circumstances.

41.   When Defendant WILCOX went to remove the handcuffs, he pulled Plaintiff's arms, which were still cuffed behind Plaintiff's back, up towards the ceiling and then twisted the handcuff still on Plaintiff's wrist with such force that it cut Plaintiff's right wrist and caused it to bleed.

42.   There was no legitimate reason to justify the use of force against Plaintiff TOWNSEND during count because at no point did he disobey orders or resist the deputies in any way.

43.   Defendant WILCOX's treatment of Plaintiff TOWNSEND was nothing more than a vindictive assertion of power over Plaintiff to humiliate, harass and injure Plaintiff, was completely unrelated to any legitimate penal interest, and was not

"NECESSARY and objectively REASONABLE", as required by the Sheriff's Department's own policies regarding the use of force by Sheriff's deputies. (*See* MANUAL, Use of Force, § I.89: *Policy*, <u>Exhibit 1</u>, at 4.)

44.   At no point did Defendant Deputy DOE and Defendant Corporal DOE intervene to protect Plaintiff from Defendant WILCOX despite being present during Defendant WILCOX unconstitutional actions and being in a position to stop Defendant WILCOX without suffering any physical harm.

### Failure to Report Use of Force

45.   The MANUAL requires that all use of force be documented and that inmates be evaluated for any resulting injuries:  "Whenever physical force used by a deputy results in a complaint of injury or an injury of a subject, seek immediate medical evaluation and/or treatment, and notify a supervisor."  (MANUAL, Use of Force, § I.89 (I)(B): *Reporting Procedures*; <u>Exhibit 1</u>, at 4.)

46.   Neither Defendant WILCOX, nor either of the other two Sheriff's Deputies who were present, reported Defendant WILCOX's use of force against Plaintiff despite the fact that the force used by Defendant WILCOX resulted in a visible injury on Plaintiff's right wrist.  Rather than seeking immediate medical treatment and/or an examination of Plaintiff, the Deputies left Plaintiff in the multipurpose for approximately two hours.  Despite the MANUAL's clear instructions to "seek immediate medical evaluation and/or treatment" whenever the use of "physical force … by a deputy results in a complaint of injury or an injury of a subject", Defendants did <u>not</u> provide Plaintiff with <u>any</u> medical treatment for over a week following this incident.  (MANUAL, Use of Force, § I.89 (I)(B): *Reporting Procedures*; <u>Exhibit 1</u>, at 4.)

### Disciplinary Action Against Inmates

47.   Immediately after the incident, Defendant WILCOX ordered Plaintiff TOWNSEND to administrative segregation ("solitary confinement"), where he remained

for several days.  Plaintiff was in a state of shock, disorientation, terror, and extreme physical pain and mental trauma beginning with the time he was violently removed from his cell in Housing Unit 8C and continuing throughout his stay in solitary confinement.

48.     Defendants' placement of Plaintiff in solitary confinement was a violation of the Sheriff's Department's policy MANUAL, which states that "… any staff member may initiate an Incident Report on an inmate who has violate[s] the inmate rules and regulations" but places a limitation by stating that it "shall be impartially imposed … and be progressive and commensurate with the seriousness of the violation while being compared with the behavioral history of the inmate while in custody." (MANUAL, Disciplinary Action, § O.1, *Policy*; Exhibit 1, at 6.)

49.     The MANUAL also imposes strict limitations on the extent of discipline imposed on inmates.  Only a supervisor may make the determination that an inmate is required to be placed in Administrative Segregation ("solitary confinement"). (MANUAL, Disciplinary Action, § O.1(IV): *Administrative Segregation*; Ex. 1, at 9.)

50.     Plaintiff TOWNSEND was never formally disciplined despite being placed in the solitary confinement.  Furthermore, Defendant WILCOX did not have the authority to place Plaintiff in solitary confinement even if there was a legitimate basis for doing so, as he was not a supervisor.  Here again, Defendants violated their own policy, in addition to violating Plaintiff's constitutional rights.

## Initial Grievances Filed in 2012

51.     On September 29, 2012, while in the solitary confinement, Plaintiff TOWNSEND filed an inmate grievance, on form J-22, regarding the excessive force and injuries endured at the hands of Defendant Deputy WILCOX.  (*See* Exhibit 2.)  Plaintiff had a difficult time just filling out the form due to pain in his right wrist, his predominant hand, caused by the injuries inflicted upon him by Defendant WILCOX.

52.     Sheriff's Sergeant North (#5882) responded to Plaintiff's grievance, informed him that the matter was being investigated, and instructed a deputy to take Plaintiff to medical to be treated.   Pictures were taken of the cuts on his wrist and Plaintiff received a wrist brace and Tylenol for the pain.

53.     On or about October 9, 2012, Plaintiff filed another grievance inquiring about his initial grievance against Defendant WILCOX and requesting that his wrist be x-rayed because of the continuing pain he was experiencing in his wrist. (*See* Exhibit 3.)

54.     On or about October 11, 2012 Plaintiff's right wrist was x-rayed; the x-rays confirmed that Plaintiff's right wrist was broken.

55.     On October 23, 2012 Plaintiff filed another grievance about the threats Defendant WILCOX made to him on the date of the incident (to wit, Defendant WILCOX's threat to kill Plaintiff after he was released).   (*See* Exhibit 4.)   Sheriff's Sergeant Flores (#5629) responded that the complaint was still being investigated and told Plaintiff to "be patient."   (*Id.*)

### Internal Affairs Complaint and Investigation into the Incident

56.     A few weeks after the September 2012 incident, an officer from Internal Affairs pulled Plaintiff out of his cell and informed him that they had viewed the videotape of the incident and were going to launch a full investigation into the conduct of Defendant WILCOX.

57.     The officer told Plaintiff that the actions of Defendant WILCOX were wrong but the findings of the investigation could take more than a year. Plaintiff was further told that he would be notified about the final disposition of the investigation but would <u>not</u> be allowed to have the findings themselves.

### Central Jail Medical Services and Policies

58.     The Sheriff's Department's official policy regarding the minimal standard of care for providing medical services to inmates states, in pertinent part:

> Any inmate complaining of illness or injury will be provided with reasonably prompt access to medical services.  The basic consideration that there be a medical program so organized … as to ensure that medical care will be available with reasonable promptness to any inmate who requires it [and that] Constitutional terms require that any inmate complaining of illness or injury be provided with reasonably prompt access to examination by a doctor of medicine, unless such medical attention has been found to be unreasonable or unnecessary by adequately trained personnel.

(MANUAL, Medical Services Defined, § M.1: *Policy*; Exhibit 1, at 12.)

## Delay in Discovering Plaintiff's Broken Wrist and Subsequent Denial of Care

59.    Although Plaintiff received minimal treatment from the Central Jail's medical personnel on or about October 9, 2012, nearly two (2) weeks after Deputy WILCOX assaulted him, the care provided by the COUNTY was not constitutionally sufficient.  The COUNTY's medical personnel merely gave Plaintiff a wrist brace and Tylenol, which did not help ease the constant pain and discomfort in his right wrist.  Plaintiff had to submit another grievance requesting that an x-ray be performed before he received an x-ray.  (*See* Exhibit 3.)

60.    On or October 11, 2012, Plaintiff's right wrist was finally x-rayed and a doctor confirmed Plaintiff's suspicions that his wrist was in fact broken.  However, the COUNTY did not provide Plaintiff with the corrective surgery necessary to fix his broken wrist because he was scheduled to be released from custody on December 26, 2012, more than two months away, and was informed that he should "take care" of the problem then.

61.    On October 24, 2012 Plaintiff submitted another request to be seen by medical services for the pain in his wrist, which the pain medication had not alleviated.  (*See* Exhibit 5.)   However, the COUNTY's medical personnel refused to provide additional treatment.

62.    Plaintiff was consequently left with a broken right wrist for over two (2) months and was merely provided Tylenol for the pain.  This lack of adequate medical care violated Plaintiff's rights under the Fifth, Eighth, and/or Fourteenth Amendments to the Constitution of the United States.

63.    Any reasonable individual in the position of the DOE Defendants who failed to provide Plaintiff with the care he needed (to wit, a prompt X-ray and the subsequent surgery which was required to repair the injuries to his wrist caused by Defendant WILCOX) would have known that their failure to provide this care constituted "deliberate indifference" due to the reckless disregard that Plaintiff would suffer a substantial risk of harm.

**Subsequent Grievances Filed in 2014 and Continued Denial of Care**

64.    As a result of not being in San Diego County, as per the conditions of his probation, Plaintiff was picked up on a bench warrant during a routine traffic stop in Illinois on July 4, 2014.  Plaintiff was transported back to San Diego County on or about July 17, 2014, and booked back into Central Jail for a probation violation.

65.    Twenty-one (21) months had passed since Plaintiff had filed his initial grievance regarding the excessive force and unconstitutional treatment he had endured at the hands of Defendant WILCOX.

66.    On July 23, 2014, Plaintiff filed a request to be seen by COUNTY medical staff because the pain medication was not alleviating the pain in his broken right wrist. (*See* Exhibit 6.)

67.    Plaintiff had yet to receive any communications concerning the outcome of the investigation Internal Affairs had initiated.

68.    On July 24, 2014, Plaintiff filed another grievance inquiring about what had transpired with regards to the internal affairs investigation into Defendant WILCOX. (*See* Exhibit 7.)

69.     On July 25, 2014, Plaintiff submitted a request to be seen by medical because of the constant pain he was experiencing in his right wrist.  (*See* <u>Exhibit 8</u>.) That same day after his wrist was X-rayed once again, Plaintiff submitted another grievance regarding the lack of medical treatment for his still broken right wrist, which was now arthritic. (*See* <u>Exhibit 9</u>.)

70.     Sheriff's Deputy Gheris (#5427) emailed Internal Affairs on July 25, 2014, and forwarded Plaintiff's grievance inquiring about the disposition of the investigation. (*See* <u>Exhibit 10</u>.)   Internal Affairs responded on July 28, 2014, and stated that they would be sending a letter to Plaintiff informing him that the disposition of the case was sustained.  (*See* <u>Exhibit 10</u>.)

71.     Plaintiff still had not heard from Internal Affairs and filed another grievance on July 30, 2014 (*see* <u>Exhibit 11</u>), and a request to Internal Affairs on August 2, 2014 (*see* <u>Exhibit 12</u>), seeking a formal response to his September 2012 grievance concerning Defendant WILCOX.

72.     On July 29, 2014, Plaintiff submitted another request to be seen by medical. (*See* <u>Exhibit 13</u>.)  On August 3, 2014 the orthopedic doctor informed him that the issue with his right wrist was now a chronic problem and that nothing could be done.

73.     Plaintiff subsequently filed a grievance that same day expressing his dissatisfaction with the lack of medical treatment that he had at the Central Jail.  (*See* <u>Exhibit 14</u>.)  On August 7, 2014 Plaintiff, once again, submitted another request to be seen by medical because of the chronic pain in his right wrist.  (*See* <u>Exhibit 15</u>.)

74.     Eventually, on or about August 11, 2014, Plaintiff received a letter, dated July 29, 2014, from Internal Affairs informing him that although a final disposition of the investigation was reached on July 12, 2013, they had failed to inform him within the requisite thirty (30) days because the "complainant" was listed as the Sheriff's Office. Nonetheless, the final disposition of the investigation was "sustained."  (*See* <u>Exhibit 16</u>.)

75.     On August 13, 2014 Plaintiff was discharged from the remainder of his probationary term and released from Central Jail.

76.     Had Plaintiff received immediate treatment and/or an examination by medical personnel on the date of Deputy WILCOX's assault, September 29, 2012, his broken wrist would have been discovered.  Furthermore, had he been afforded the care needed to fix the break in his right wrist, he would not have had to endure habitual pain and the long-term damages which has resulted in his right wrist becoming arthritic and considered a chronic issue.

77.     Plaintiff TOWNSEND suffered extreme psychological distress as a result of this ordeal.  For nearly two years, Plaintiff has endured physical pain and suffering, as he went about his daily life with a broken right wrist, which incidentally is his predominant hand.  Plaintiff still suffers symptoms to this day, including but not limited to, fear, trauma, humiliation and emotional distress as a result of having been subject to such inhumane treatment.

## INJUNCTIVE RELIEF

78.     On information and belief, a culture exists in the Sheriff's Department in general, and the Central Jail in particular, that promotes and/or tolerates the use excessive force against pre-trial detainees when handcuffing them for the express purpose of causing harm and interfering with their civil rights.

79.     On information and belief, Sheriff's deputies are subjecting pre-trial detainees to excessive discipline that is neither progressive nor commensurate with the seriousness of the alleged violation for the purpose of causing harm and interfering with their civil rights.

80.     Defendant COUNTY's policies, practices, and customs (namely, the misuse of excessive force, the misuse and abuse of disciplinary action against pretrial detainees,

and failure to provide adequate medical treatment) has irreparably harmed Plaintiff in violation of his statutory and constitutional rights.

81.    Plaintiff TOWNSEND is informed and believes, and thereon alleges that, unless enjoined, Defendants will continue to engage in the unlawful acts and policies described above, in violation of the legal and constitutional rights of pretrial detainees.

82.    There is no adequate and complete remedy at law, thus making declaratory and injunctive relief necessary.

## FIRST CAUSE OF ACTION

### Excessive Force (42 U.S.C. § 1983)

### (Against Defendant WILCOX)

83.    Plaintiff hereby re-alleges and incorporates all of the above paragraphs, as though the same were fully set forth herein in full.

84.    Defendant WILCOX used unreasonable and excessive force during count to remove Plaintiff from Housing Unit 8C on or about September 29, 2012.

85.    Plaintiff TOWNSEND had a clearly established right under the Fifth, Eighth and/or Fourteenth Amendments to be free from cruel and unusual punishment, the use of excessive physical force, and from conduct that "shocks the conscience" and was unnecessary to achieve a legitimate penal aim or objective.

86.    Defendant WILCOX's use of force was objectively unreasonable given the routine nature of situation and that Plaintiff did not actively resist, disobey, or physically threaten anyone.  Defendant WILCOX's use of force was so excessive that Plaintiff's right wrist was broken and both the Sheriff's Department and the Citizens' Law Enforcement Review Board sustained Plaintiff's allegations that Defendant WILCOX used excessive force against him.

87.    In committing these acts and omissions, Defendant acted in the course and scope of his employment and under the color of law.

88.   Defendant WILCOX's excessive use of force deprived Plaintiff of his clearly established rights under the United States Constitution and also caused Plaintiff severe physical injury, pain and suffering, extreme emotional distress, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

89.   As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

90.   The acts and omissions of Defendant WILCOX with respect to Plaintiff, as described and set forth herein above, were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety.  As such, Defendant's actions justify an award of punitive and exemplary damages against Defendant WILCOX, in an amount to be determined at the time of trial, in order to punish Defendant, and make an example of him for the purpose of discouraging similar actions by others in the future.

## SECOND CAUSE OF ACTION

### Denial of Due Process (42 U.S.C. § 1983)

### (Against Defendants WILCOX and DOES 1-25)

91.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein.

92.   Under the Due Process Clause of the United States Constitution, a detainee may not be punished prior to an adjudication of guilt.

93.   On or about September 29, 2012 Defendants deprived Plaintiff TOWNSEND of his liberty without due process of the law.

94.   Defendants WILCOX, DOE Deputy, and DOE Corporal, singled Plaintiff TOWNSEND out for no reason while conducting night count and proceeded to punish

him further by breaking his wrist and sending him to the "hole."

95.     The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution (including the Fifth, Eighth, and Fourteenth Amendments), which also legally, proximately, foreseeably, and actually caused Plaintiff to suffer physical injury, emotional distress, pain-and-suffering, and further damages according to proof at trial.

96.     DOE Defendants 1-25 are COUNTY and Sheriff's Department employees (including supervisory Sheriff's Deputies) who should have prevented Plaintiff from being placed in the solitary confinement without justification and against the Sheriff's Department's policies.  These Defendants' failure to prevent Plaintiff from being placed in solitary confinement constituted a deliberate indifference to Plaintiff's health and safety.  Accordingly, these Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

97.     Plaintiff TOWNSEND is informed and believes, and thereon alleges, that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying an award of punitive and exemplary damages against Defendants in an amount to be determined at the time of trial in order to deter them from engaging in similar conduct and to make an example by way of monetary punishment.

98.     As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

**THIRD CAUSE OF ACTION**

**Denial of Substantive Due Process (42 U.S.C. § 1983)**

**(Against Defendants WILCOX and DOES 1-25)**

99.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein.

100.   The conditions of Plaintiff's confinement in the "hole" amounted to punishment without due process of the law.

101.   Staff and Deputies at Central Jail denied Plaintiff TOWNSEND access to medical treatment for his broken wrist for almost two (2) weeks, resulting in the wrist healing improperly and subjecting Plaintiff to permanent disabilities.  Depriving Plaintiff access to medical treatment, after subjecting him to an excessive and unnecessary use of force, which broke his wrist, was not reasonably related to a legitimate goal.  It was arbitrary and purposeless and amounted to punishment that may not be constitutionally inflicted upon pre-trial detainees.

102.   Defendants committed these acts sadistically and maliciously for the express purpose of causing harm and humiliation.  This conduct falls outside the standards of civilized decency and shocks the conscience.

103.   Due process of law requires the state to observe those principles that are so rooted in traditions and conscience of our people as to be ranked as fundamental. Defendants' conduct in denying the most basic human needs of medical care to Plaintiff TOWNSEND shocks the conscience.

104.   As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

105.   Plaintiff TOWNSEND is informed and believes, and thereon alleges, that the acts of the individual Defendants were willful, malicious, intentional, oppressive,

reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying an award of punitive and exemplary damages against defendants in an amount to be determined at the time of trial in order to deter them from engaging in similar conduct and to make an example by way of monetary punishment.

106.   As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

## FOURTH CAUSE OF ACTION

### Deliberate Indifference – Denial of Medical Care (42 U.S.C. § 1983)

### (Against Defendants WILCOX and DOES 1-50)

107.   Plaintiff hereby re-alleges and incorporates the preceding paragraphs as though the same were fully set forth herein.

108.   Defendant WILCOX, Sheriff's Deputies, nurses, and doctors alike, including DOE Defendants, failed to provide Plaintiff with adequate medical care in the wake of the September 2012 incident despite his extensive injury, to wit, having a broken right wrist.  Even when an x-ray was finally conducted and Plaintiff's broken wrist was discovered, Defendants inexplicably refused to treat Plaintiff's broken wrist.

109.   Defendants informed Plaintiff that because his release date from the Central Jail was on or about December 26, 2012, they would not provide the surgery Plaintiff needed as a result of the injury inflicted upon Plaintiff by Defendant WILCOX.  Instead, Defendants informed Plaintiff that he should get surgery on his wrist when he was release and <u>left Plaintiff with an untreated broken wrist for over two (2) months</u>.

110.   Thus, although the illegal and unconstitutional acts of Defendant WILCOX broke Plaintiff's wrist, Defendants COUNTY, GORE, and DOE COUNTY agents and

employees still refused to properly treaty Plaintiff's broken wrist.  Instead, Defendants told him that he would have to wait more than two (2) months and have his wrist repaired when he was released.

111.   This conduct is outrageous, shocks the conscience, and has no place in a civilized society.

112.   Defendants' denial of medical care exacerbated Plaintiff's physical injury and caused him increased trauma, mental and emotional distress, increased physical pain-and-suffering, and a physical disability.

113.   In committing the acts and omissions set forth herein, Defendants, and each of them, were acting under color of law and pursuant to their employment and/or agency with the COUNTY.

114.   As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

115.   Plaintiff TOWNSEND is informed and believes, and thereon alleges, that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying an award of punitive and exemplary damages in an amount to be determined at the time of trial.

116.   As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

# FIFTH CAUSE OF ACTION

## Deliberate Indifference – Failure to Train (42 U.S.C. § 1983)

## (Against Defendant Sheriff GORE)

117.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

118.   Defendant Sheriff GORE, as a matter of custom, practice policy, failed to maintain adequate and proper training as to the Constitutional rights of pretrial detainees, to prevent the consistent and systematic use of excessive force and to prevent extra-judicial punishment by officers.

119.   Defendant Sheriff GORE failed to provide adequate training to the Sheriff Department's employees on the rights of pre-trial detainees, the appropriate use of force against pre-trial detainees, and the requirements to provide medical care to pre-trial detainees.

120.   Defendant Sheriff GORE failed to provide adequate training to officers on the rights of pre-trial detainees to maintain basic human needs.

121.   The failure to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of Plaintiff TOWNSEND and others similarly situated.

122.   The constitutionally inadequate lack of training as to the individual Defendants involved in this incident caused Plaintiff to suffer unnecessary and wanton infliction of pain and physical injury.

123.   The acts and omissions complained of herein were done pursuant to customs and policies authorized, condoned, ratified and carried out by all Defendants that results in use of unwarranted excessive force for purposes of inflicting physical and

mental abuse on inmates gratuitously or as retribution, in furtherance of a policy of misuse of power over detainees in the COUNTY jails.

124.   As a result of the actions by Defendant Sheriff GORE, Plaintiff suffered physical and psychological injuries.   As a direct consequence of Defendant Sheriff GORE's failure to properly train deputies, Plaintiff suffered unconstitutional treatment and inhumane conditions during his detainment in the COUNTY's Central Jail.

## SIXTH CAUSE OF ACTION

**Deliberate Indifference – Failure to Supervise and Discipline (42 U.S.C. § 1983)**

**(Against Defendant Sheriff GORE)**

125.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

126.   Defendant Sheriff GORE, as a matter of custom, practice policy, failed to supervise officers, or to design and implement a program of supervision, to prevent, deter, and punish the unconstitutional and excessive use of force by Sheriff's Deputies in the COUNTY's jails (including, but not limited to, the Central Jail).

127.   No supervising official from the Sheriff's Department took appropriate steps to supervise the individual officers who were performing unreasonable seizures by using excessive force.

128.   Defendant Sheriff GORE knew or should have known, of the Constitutional violations committed by his officers, but failed to correct their abuse of authority or discourage their unlawful use of authority.

129.   Supervising Sheriff's Deputies witnessed, or were informed about, the Constitutional violations but failed to supervise or discipline the offending Deputies. Instead, they chose to condone and acquiesce in the abusive behaviour by refusing to retrain, train, or correct the offending Deputies' abusive behavior.

130.   Plaintiff TOWNSEND is informed and believes, and thereon alleges that the Defendants involved in the assault on him that occurred on September 29, 2012 (including Defendant WILCOX and the two DOE Defendant Deputies) were never disciplined for their unconstitutional treatment of Plaintiff on that date.

131.   Defendant Sheriff GORE was aware of the excessive force used by Defendants and the subsequent failure to provide needed medical care.

132.   Defendants were, or should have been, aware that the policy regarding supervision and discipline of officers who violated the rights of pre-trial detainees and commit assaults and battery was so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerousness and lawless conduct perpetuated by their officers.

133.   Defendant DOES 1-25 (supervisory Sheriff's Deputies) expressly ratified the actions of Defendants WILCOX, DOE Deputy and Defendant DOE Corporal despite having witnessed the events on the video surveillance footage from the Deputies assault of Plaintiff on September 29, 2012.

134.   The constitutionally deficient investigation and lack of discipline was done with deliberate indifference to the rights of Plaintiff and others in his position.

135.   The lack of adequate supervision and discipline caused Plaintiff TOWNSEND's damages.  And as a result of said actions by Defendant Sheriff GORE, Defendant DOES, Plaintiff suffered physical and psychological injuries.

<u>**SEVENTH CAUSE OF ACTION**</u>

*Monell* **Municipal Liability for Policy of Excessive Force, Denial**

**of Human Dignity, and Denial of Medical Care (42 U.S.C. § 1983)**

**(Against Defendants COUNTY and GORE)**

136.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

137. Defendants COUNTY and GORE promulgated and maintained an unconstitutional policy, ordinance, or regulation, which allowed Sheriff's Deputies in COUNTY jails to cinch handcuffs too tightly, use of excessive force in violation of the rights pre-trial detainees, and to refuse to provide adequate medical care to pre-trial detainees. This policy directly and proximately caused Plaintiff injuries and damages.

138. Defendants COUNTY and GORE tolerated the widespread unconstitutional acts by Deputies and failed to set forth appropriate policies regarding the treatment of pretrial detainees

139. During the relevant time period, Defendant Deputies and DOES were acting pursuant to the unwritten policy or practice of Defendants COUNTY and GORE which tolerated the use of excessive force against, and the denial of medical care to, pre-trial detainees.

140. Defendants COUNTY and GORE knew, or should have known, of the risks posed by the Department's policies regarding the treatment of pre-trial detainees.

141. As a direct result of these policies and practices, Defendants WILCOX, DOE Deputy and DOE Corporal wrongfully targeted and battered Plaintiff and thereby violated his constitutional rights.

142. The unlawful and illegal conduct of all Defendants deprived Plaintiff TOWNSEND, and other similarly situated citizens, of the rights, privileges, and immunities secured to them by the Constitutions of the United States and state of California.

143. Defendants COUNTY and GORE maintained a *de facto* policy of permitting unconstitutional and lawless conduct by Defendant's employee deputies.

144. Defendants COUNTY and GORE also maintained a *de facto* policy of failing to properly train, supervise and discipline Defendants' employee deputies as set forth in detail in the Sixth and Seventh Causes of action, above.

145.   As a direct, proximate, and foreseeable result of Defendants' policy, Plaintiff suffered injuries and damages alleged herein.

### EIGHTH CAUSE OF ACTION

**Failure to Summon Medical Care (Cal. Gov. Code §845.6)**

**(Against Defendants WILCOX, DOES 1-25, and COUNTY)**

146.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

147.   Defendants owed Plaintiff an affirmative, though limited, duty under Cal. Government Code §845.6, to summon immediate medical care where there is "actual or constructive knowledge that the inmate is in need of immediate medical care."

148.   Defendant WILCOX and Sheriff's Deputies failed to summon immediate medical in the wake of the September 2012 incident despite the obvious and apparent injury to Plaintiff's right wrist, to wit, blood running down his arm, and left him unattended in a multipurpose room for nearly two hours.  Though Defendants delayed nearly two weeks in providing Plaintiff with an x-ray, once the x-ray was taken, Defendants knew that Plaintiff's right wrist was broken and that Plaintiff needed surgery to care repair it.

149.   Thus, Defendants knew, or had reason to know, that Plaintiff was in need of immediate medical treatment.  Despite this fact, Defendants failed to take reasonable action to summon such care or to provide that care, and thus violated California state law, including California Government Code §844.6 and 845.6

150.   Plaintiff TOWNSEND is informed and believes, and thereon alleges, that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying an award of punitive and exemplary damages in an amount to be determined at the time of trial.

151.   As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

152.   At the time Defendants, and each of them, breached their mandatory duty and failed to summon medical care to Plaintiff, pursuant to California Government Code §845.6, and were acting within the course and scope of their employment with Defendant COUNTY.  Accordingly, the COUNTY is vicariously liable under California Government Code §820(a) and §815.2(a).

## NINTH CAUSE OF ACTION

### Failure to Discharge Mandatory Duty (Cal. Gov. Code § 815.6)

### (Against Defendants WILCOX, DOES 1-50, and COUNTY)

153.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

154.   California Government Code §815.6 make a public entity liable for its failure to discharge a mandatory duty imposed by an enactment designed to protect against the risk of a particular kind of injury.

155.   California Government Code §845.6 imposes such a mandatory duty.  The purpose of which is, in part, to ensure the safety and health of inmates and to provide inmates with medical care when the need for medical care becomes apparent.

156.   Defendants breached the mandatory duty owed to Plaintiff pursuant to California Government Code §845.6, causing the type of harm the enactment was designed to prevent.

157.   Plaintiff TOWNSEND is informed and believes, and thereon alleges, that the acts of the individual Defendant were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights,

welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

158.   As a direct and legal result of Defendants' acts and omissions, Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorney's fees, costs of suit, and other pecuniary losses not yet ascertained.

159.   At the time Defendants breached their mandatory duty and failed to summon medical care to Plaintiff, pursuant to California Government Code §845.6, Defendants were acting within the course and scope of their employment with Defendant COUNTY.   Accordingly, the COUNTY is vicariously liable under California Government Code §820(a) and §815.2(a).

## TENTH CAUSE OF ACTION

### Medical Malpractice

### (Against Defendant DOES 26-50)

160.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

161.   Defendant DOES 26-50 were doctors and nurses employed by the COUNTY to provide medical care to pretrial detainees and thus owed a duty to Plaintiff TOWNSEND to use the care and skill ordinarily exercised in like cases by reputable members of their medical professions.   Said Defendants owed a further duty to Plaintiff to use reasonable diligence and their best judgment in the exercise of their professional skills.

162.   Defendants breached their duty of care to Plaintiff TOWNSEND. Defendants were negligent and with their conduct fell below a reasonable standard of care.   Such deficient and negligent conduct includes but is a not limited to, unreasonable delay in providing medical attention and treatment to Plaintiff despite his extensive

injury, to wit, having a broken right wrist, refusal to treat his wrist with anything more than Tylenol and wrist brace even when an X-ray revealed a break in this right wrist. Defendants informed Plaintiff that because his release date was December 26, 2012, they would not provide the surgery Plaintiff needed as a result of the injury inflicted upon Plaintiff by Defendant WILCOX.  Instead, Defendants informed Plaintiff that he should get surgery on his wrist when he was released and left Plaintiff with an untreated broken wrist for over two (2) months.

163.   It was a foreseeable that as a result of Defendants' failure to provide Plaintiff the medical care necessary to treat his broken wrist that he would suffer harm. As a direct and proximate result of such conduct Plaintiff suffered severe physical injury and caused him increased trauma, mental, and emotional distress, and increased pain and suffering.

## ELEVENTH CAUSE OF ACTION

### Battery – California State Tort Claim

### (Against Defendants WILCOX, DOE Deputy, DOE Corporal, and COUNTY)

164.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

165.   When Defendant WILCOX decided to needlessly single out Plaintiff TOWNSEND he committed a battery and acted with the intent to cause harmful and offensive contact to Plaintiff.  The force used was severe enough to break Plaintiff's right wrist.

166.   At no time did Plaintiff TOWNSEND consent to the touching. Furthermore, Plaintiff was harmed and offended by Defendant WILCOX's conduct, and a reasonable person in his position would have been harmed and offended by the conduct.

167.   Defendant DOE Deputy and DOE Corporal failed to intervene despite the

opportunity and duty to prevent such a violation of Plaintiff's rights and are therefore also liable for his injuries.

168.   Defendant WILCOX's battery caused Plaintiff TOWNSEND pain and suffering extreme emotional distress, fear, trauma, and humiliation, in addition Plaintiff's wrist has been permanently impaired as a result of the abusive and excessive force used against him.

169.   Plaintiff TOWNSEND is informed and believes, and thereon alleges, that the acts and omissions of Defendant WILCOX, DOE Deputy, and DOE Corporal were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights, welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

170.   As a direct and legal result of Defendants' act and omissions Plaintiff has suffered damages, including, without limitation, pain and suffering, extreme mental and emotional distress, severe physical injuries, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

171.   At the time Defendant WILCOX, DOE Deputy, and DOE Corporal were acting within the course and scope of their employment with Defendant COUNTY. Accordingly, the COUNTY is vicariously liable under California Government Code §820(a) and §815.2(a).

## TWELFTH CAUSE OF ACTION

### Negligence (Cal. Gov. Code, §844.6(d))

### (Against **All** Defendants)

172.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

173.   Defendants owed a duty of care toward Plaintiff TOWNSEND and were

required to use reasonable diligence to ensure Plaintiff's safety while in their custody and control.  Defendants' actions and omissions were negligent and reckless, including but not limited to:

a) The failure to properly assess the need to use force against Plaintiff;

b) The negligent tactics and handling of the situation with Plaintiff;

c) The negligent use of excessive force against Plaintiff;

d) The failure to properly train, supervise, and discipline employees, including the individual Defendants;

e) The failure to summon and provide reasonable and timely medical care to Plaintiff;

f) Failure to properly screen, diagnose, and treat Plaintiff's legitimate medical need; and

g) The negligent hiring, retention, and assignment of COUNTY employees, including the individual defendants.

h) The violations of California Government Code §845.6 and thus Defendants are liable for Negligence Per Se.

174.  As a direct and legal result of Defendants' acts and omissions, Plaintiff TOWNSEND has suffered damages, including, without limitation, pain and suffering, extreme mental emotional distress, medical expenses, attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained.

175.  As a result of their conduct, Defendants' are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene when they had the opportunity and duty to do so to prevent these violations.

176.  Plaintiff TOWNSEND is informed and believes, and thereon alleges, that the acts of the individual Defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of Plaintiff's rights,

welfare and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

177.   At the time they committed the negligent acts and omissions alleged herein, Defendants were acting within the course and scope of their employment with Defendant COUNTY.   Accordingly, the COUNTY is vicariously liable under California Government Code § 820(a) and § 815.2(a).

## THIRTEENTH CAUSE OF ACTION

### Violations of the Bane Act, California Civil Code §§ 52.1 and 52

### (Against All Defendants)

178.   Plaintiff hereby re-alleges and incorporates all preceding paragraphs as though the same were fully set forth herein in full.

179.   Defendants, and each of them, are liable to Plaintiff for violating his California civil rights enshrined in the Bane Act, in that Defendants interfered by threats, intimidation, and coercion with his rights to due process, and to be free from physical abuse as guaranteed by the United States Constitution, the California Constitution, California Civil Code §1708 thereby proximately and foreseeably causing his damages, injury and, loss.

180.   Specific violations of the Bane Act perpetrated by Defendants against Plaintiff include but are not limited to, (1) Defendant WILCOX violently shoving, kicking, and pushing Plaintiff's face against the wall; (2) Defendant WILCOX using excessive force to violently cinch and twist the handcuffs to cut and break his right wrist; and (3) Defendant WILCOX violently threatening Plaintiff that he would shoot and kill him should he ever see him on the streets.

181.   California Civil Code §52.1(a) provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the constitutional or statutory rights of "any individual or individuals," the

Attorney General, or any district or city attorney, may bring a civil action for equitable or injunctive relief.   California Civil Code §52.1(b) allows "[a]ny individual" so interfered with to sue for damages.  California Civil Code §52.1(g) states that an action brought under §52.1 is "independent of any other action, remedy or procedure that may be available to an aggrieved individual under any provision of law," including California Civil Code §51.7.

182.   Pursuant to California Civil Code §52(a) and (b), Plaintiff is entitled to up to three times his actual damages, and to exemplary damages; to a civil penalty of $25,000 for each violation of his rights; and to attorney's fees in an amount to be determined by the Court.

183.   Defendants are liable because they aided and abetted and/or ratified the conduct of Defendants that violated Plaintiff's rights under California Civil Code §52.1, et seq.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1)   For compensatory, general and special damages (including direct, indirect, and emotional damages), presumed damaged and nominal damages, in amounts to be determined at trial.

(2)   For punitive and exemplary damages, against the individual Defendants only, in an amount sufficient to deter and make examples out of Defendants, in amounts to be determined at trial.

(3)   For past and future medical expenses, and lost wages, in an amount to be determined at trial.

(4)   For reasonable attorney's fees and costs and expenses of litigation, pursuant to California Code of Civil Procedure §1021.5, California Civil Code §52(b)(3) and

§52.1(h), Title 42 U.S.C. §1983-1988, and any and all other statutory law and case law.

(5)     For injunctive relief.

(6)     For any and all other relief in law and equity to which Plaintiff may be entitled under the law and which this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury as to each and every cause of action against each and every Defendant to the extent permitted by law.

Respectfully Submitted,

McHARRIE LAW
SINGLETON LAW FIRM


By:     _/s/ *Jessica McHarrie*_
          JESSICA McHARRIE
          GERALD SINGLETON
          BRODY A. McBRIDE
     Attorneys for Plaintiff LEO TOWNSEND